IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLAF PETER JUDA,

        Plaintiff,

vs.                                                                                      No. CIV 96-584 JP/LFG

DENNIS MICHAEL NERNEY, et. al.,

        Defendants.

## **ORDER RECOMMENDING DISMISSAL WITH PREJUDICE**

THIS MATTER came before the Court on remand by the United States Court of Appeals for the Tenth Circuit in *Juda v. Nerney, et al.,* 149 F.3d 1190, 1998 WL 317474 (10th Cir. June 16, 1998)(unpublished disposition). Plaintiff Olaf Peter Juda ("Juda") brought two actions to recover property administratively forfeited by the United States Custom Service and to obtain damages for alleged violations of his due-process rights under the Fifth Amendment. The District Court dismissed all of Juda's claims and he appealed. The Tenth Circuit affirmed the dismissal in part and reversed in part. The Tenth Circuit found that seizure of Juda's home violated Juda's due-process rights and that he was entitled to an equitable remedy. The circuit remanded with directions to consider whether the government brought the forfeiture proceeding within a reasonable time period. The Tenth Circuit, with respect to items of personal property seized, instructed the Court to look at whether the items in question were subject to forfeiture and whether Juda had a basis for the return of the property.

Pursuant to the remand, the Court held an evidentiary hearing on October 16, 1998. At the conclusion of the hearing, the Court issued preliminary proposed findings and recommended

disposition. The Court advised Juda that he would be given an opportunity to respond, and that upon review of his objections, the Court would memorialize the oral findings in writing, making any changes based upon Juda's objections, if appropriate. Juda filed his objections on December 1, 1998. The Court reviewed the objections and finds that no modifications need be made to the oral findings and recommended disposition announced at the conclusion of the evidentiary hearing.

    1. On remand, the Court is limited to consideration of issues that are contained within the appellate court's mandate. The Order of Remand in this case compels the Court to consider two issues. First, whether there was a violation of Juda's due-process rights; and, secondly, to determine whether there was actual notice concerning forfeiture of the personal property, or, alternatively, to consider the arguments whether the items were subject to forfeiture because it would serve no purpose to return items that were subject to forfeiture.

    2. The Tenth Circuit determined that the agreement that existed between the United States and Mr. Chatwin, resulting in the sale of real property, constituted a seizure without notice to Juda, who, although not the title owner, nonetheless, maintained an ownership interest in the property. The Tenth Circuit concluded that an equitable remedy may be appropriate.

    3. The procedural fault noted by the Tenth Circuit concerning lack of notice of seizure to Juda did not necessarily invalidate the subsequent forfeiture. Indeed, the Court found that Juda received timely notice of the forfeiture and he was aware that the $150,000 check represented the proceeds of the sale of the property.

    4. One of the issues on remand was to determine whether the two-year delay between the seizure and forfeiture violated Juda's due-process rights.

5. Factors to consider under this portion of the circuit's order are those contained in the Supreme Court's decision in *United States v. Eight Thousand Eight Hundred and FiftyDollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564-65, 103 S. Ct. 2005 (1983).. The Court looks to the length of delay, the reasons for the delay, the claimant's assertion of his right, and prejudice.

6. Here, it is conceded there was a twenty-month delay. The reasons for the delay, as presented by evidence before the Court, are as follows. There was a criminal prosecution in a very complex case pending in the United States District Court for the Northern District of California. A parallel civil action could significantly jeopardize a criminal prosection.

7. The criminal case involved some sixteen tons of hashish, international contacts, complex and tricky legal issues involving such matters, such as whether search and detection techniques authorized in foreign countries, but not in the United States, could be used in a criminal prosection bought in the United States.

8. The delay was also occasioned by the concern that discovery applicable in a civil case is much broader than that allowed in criminal cases. Indeed, a criminal defendant or co-defendants could utilize the guise of civil discovery in an attempt to obtain information that would not ordinarily be authorized in a criminal prosecution.

9. It is also apparent that Fifth Amendment rights could be asserted by Juda which could interfere with discovery in a civil case.

10. The United States Attorney's office in Northern California requested that the District of New Mexico not proceed with the civil forfeiture proceedings during the pendency of the criminal case and expressed concern that disclosure of information could implicate national security. The national security concerns related to disclosure of tracking and detection techniques and equipment.

The United States Attorney's office in Northern California expressed concern about the public dissemination of this information. The concerns were at least significant enough that the discussions were held with high-level authorities in the United States Justice Department in Washington D.C.

11. The concerns were so persuasive that the U.S. Attorney in this district sealed the applications pending in New Mexico, terminated the proceedings, and dismissed the action without prejudice, notwithstanding that the prosecutor's office had secured orders issued by a United States Magistrate Judge based on a probable cause determination that there was a nexus between the property to be seized and criminal activity.

12. There is evidence indicating that the government reinitiated forfeiture proceedings immediately following Juda's sentencing.

13. With respect to the second factor, the assertion of rights, it is clear that Juda made a reasonable inquiry concerning his property through Freedom of Information requests and through letters to the United States Attorneys' offices in California and New Mexico.

14. Juda did not, however, make a demand that proceedings be initiated, and, indeed declined any interest in the $150,000 check, notwithstanding that he was aware the check represented the proceeds of the sale of the residence.

15. There was no showing, whatsoever, that Juda was prejudiced in his ability to contest the forfeiture proceedings as a result of the twenty-month delay.

16. Based on these findings, the Court concludes, as to the first issue, that the twenty-month delay did not violate Juda's due-process rights. The Court specifically notes that an eighteen-month delay, did not serve as a basis for a finding of a due-process violation. *See United States v. $8,850.* A thirty-month delay was not deemed violative of due-process rights in *United States v. $292,888*

*in U.S. Currency*, 54 F.3d 564, 567 (9th Cir. 1995); or, indeed, a four-year delay was found permissible in *United States v. United States Currency in the Amount of $228,536,* 895 F.2d 908, 917 (2nd Cir. 1990). The Tenth Circuit cited to these cases in footnote eight. By virtue of the Court's finding that there is no due-process violation, the Court concludes that there is no equitable remedy that is required or suggested by the Tenth Circuit.

17. This Court previously found that in reference to the forfeiture of personal property, Juda had actual notice of the forfeiture proceedings by virtue of the notices mailed to his former residence, some of which were actually received by his tenant, conveyed to Attorney Mark Donatelli and forwarded to Juda's criminal defense attorney in California.

18. The Tenth Circuit rejected this conclusion and found that the Court's finding lacked sufficient evidentiary support. Accordingly, remanded for this Court to consider and to determine whether Juda had actual notice concerning those forfeiture proceedings. No evidence has been presented on this issue. By that, the government has not presented evidence that Juda had actual knowledge or notice of the forfeiture proceedings. And, indeed, Juda has not presented any evidence that he lacked notice about the forfeiture proceedings relating to the personal property.

19. Normally, in the absence of evidence, and with the findings as enunciated by the Tenth Circuit, the Court would be prepared to find that the personalty listed in Government Exhibit B should be returned to Juda. However, the Tenth Circuit stated:

> If necessary, the Court may proceed to evaluate the merits of Juda's arguments as to why the property is not subject to forfeiture. It would serve no purpose to upset the forfeitures for procedural faults if Juda has no basis for the return of the property.

*Id.* at 7.

20. The United States contends and the evidence supports a finding that the personal property seized during the summer of 1991 as set out in Government Exhibit B constitutes the proceeds of criminal activity. This list contains illegally gotten gains, demonstrating or evidencing the profits of criminal activity.

21. There is no evidence demonstrating legal employment for Juda prior or subsequent to 1987. Agent Lisica, a twenty-six-year veteran of a federal investigative agency, found no evidence demonstrating that Juda had any legitimate source of income that could explain or sustain Juda's lifestyle subsequent to 1987.

22. There is evidence indicating that Juda traveled extensively and was away for as many as five to six months at a time.

23. Juda paid for what is traditionally known as large ticket items, such as automobiles, or in this case, a home, on a cash basis. Juda's payments for a Jeep Cherokee, for example amounted to $1700 a month, paid in cash, resulting in completion of a payment of the vehicle in the course of one year. Juda's payments on the land and vehicle were as high as five to six thousand dollars a month. Indeed, Juda made average monthly cash payments of anywhere between seven and nine thousand dollars a month.

24. Items seized pursuant to a search warrant served in Taos, New Mexico, resulted in seizure of various items of personality, including information from bank accounts and safety deposit keys. Items seized from those bank accounts are outlined in Government Exhibit G.

25. There is testimony that Juda's co-defendant and co-conspirators made statements indicating that large amounts of money were paid to Juda as a result of drug transactions, including a $400,000 payment for the delivery of hashish.

26. An undercover agent met with Juda on two occasions, and during the course of those meetings, Juda implicated himself and admitted his involvement in large-scale drug transactions involving the delivery of hashish.

27. The federal agent who testified indicated that he found evidence of a practice called "smurfing," wherein an individual seeks to avoid federal reporting obligations for transactions in excess of ten-thousand dollars. He obtained information and, based on his investigation, found that Juda engaged in a series of cash transactions slightly under ten-thousand dollars, which, in his opinion, was an effort to avoid the federal financial transaction reporting requirements.

28. Juda presented evidence that he was involved in three separate large drug transactions. One in 1987 involved the importation of marijuana delivered off the coast of Oregon. This is the proceeding identified in *United States v. Juda*, 46 F.3d 961 (9th Cir. 1995). A second drug transaction took place in 1989 with delivery to Canada, and the third, a 1991 transaction which resulted in Juda's conviction.

29. Juda testified that the 1989 drug transaction involved a large shipment of hashish to Canada. He testified that the intent was to deliver the hashish to Canada, and, indeed, it was delivered. Juda was paid in Canadian dollars within the country of Canada. However, Juda was afforded the opportunity to receive payment in United States currency, and he opted to convert the monies. He received approximately $400,000 in U.S. currency paid to him in Long Island, New York.

30. There is a nexus between illegal drug trafficking and the items contained in Government Exhibit B, the personalty that was seized. The Court notes that Juda has argued that his intent was to deliver the drugs to Canada, that he did not intend to deliver drugs to the Unites States, and that

7

he had no intention to violate United States law.  He states that he delivered the drugs to Canada and was paid in Canadian dollars.  Juda argues that there has been no violation of United States law and that there is no extraterritorial application of the forfeiture laws.

31.  The Court finds that the payment of funds to Juda in the United States is part of a conspiracy and is, indeed, the completion of the drug-trafficking conspiracy.  Also, that there is a nexus between the receipt of payment in the United States and subsequent activities to hide or to avoid detection of the receipt of illegal proceeds by activities occurring in the United States.

32.  Based on these findings, the Court determines that the $150,000 which represents the proceeds from the sale of the property, together with the items identified as the 1992 Jeep Cherokee, the $40,000 recovered from the Santa Fe safety deposit box, the $50,000 recovered from the Taos safety deposit box, the $19,830 recovered from the Albuquerque bank, the $19,882 from the Taos Bank, the $8,753 from another Albuquerque bank account, and the miscellaneous items valued at $1,134 taken from the storage locker, all constitute proceeds from the sale of drugs.  The government has shown that there is a nexus between those items and illegal drug trafficking, and, indeed, Juda testified that money came from the 1989 transaction.

The Court concludes that it would serve no purpose to set aside the forfeitures for procedural faults since the items constitute contraband and the proceeds of illegal items.  Accordingly, the Court finds that Juda is not entitled to relief and that his petition should be dismissed with prejudice.

_____
Lorenzo F. Garcia
United States Magistrate Judge