IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLAF PETER JUDA,

        Plaintiff,

vs.                              No. CIV 96-584 JP/LFG

DENNIS MICHAEL NERNEY, et al.,

        Defendant

### MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION
### ON THE ISSUE OF TOLLING THE STATUTE OF LIMITATIONS[1]

This is a *pro se, in forma pauperis* action arising from Plaintiff Olaf Peter Juda's ("Juda") efforts to void the forfeiture of certain items of his personal property. This matter comes before the Court on remand from the Tenth Circuit for a determination "whether the government has a valid argument against the operation of the statute of limitations" on forfeiture proceedings. Juda II, at *3. The Court also addresses Juda's Motion for Immediate Return of Personal Properties [Doc. 54], and Juda's Motion to Set Time for Telephonic Hearing [Doc. 55].

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

**Factual and Procedural Background**

The criminal case which formed the basis, in part, of the subsequent forfeiture proceedings involved international smuggling of 16 tons of hashish aboard a ship, the Malekula, piloted by Juda. The operation was dangerous and led to a confrontation on the high seas, and the subsequent conflagration and sinking of the Malekula so as to avoid apprehension and to destroy the hashish prior to its seizure.

Following Juda's arrest on July 16, 1991 for smuggling the hashish and for arson on the high seas, the United States Customs Service, with the assistance of the United States Attorney's Office for the District of New Mexico, began forfeiture proceedings against certain items of Juda's real and personal property located in New Mexico.[2] Forfeiture proceedings were delayed due to the pendency of criminal proceedings, the concern that discovery available in civil cases could thwart Juda's criminal prosecution, and high-level Justice Department concerns relating to national security, including potential disclosure of sensitive tracking, eavesdropping, and electronic detection equipment used in the criminal investigation. (Magistrate Judge's Findings of Fact and Order Recommending Dismissal with Prejudice [Doc. 32], at ¶¶ 8-11).

An evidentiary hearing conducted in this case demonstrated that the government had a substantial justification for believing that Juda's land, vehicles, cash and other personal property were acquired with illegal drug proceeds and had a nexus with Juda's criminal activities. (Magistrate

---

[2]The factual background of this case has been recited in several previous opinions and will not be repeated here, except to the extent necessary to this analysis. The facts surrounding Juda's arrest are set forth in United States v. Juda, 46 F.3d 961, 964-65 (9th Cir. 1995). A detailed account of the background of the various forfeiture proceedings can be found in the previous appellate opinions in this case, Juda v. Nerney, 149 F.3d 1190 (Table, text in Westlaw), Nos. 97-2192, 97-2326, 1998 WL 317474 (10th Cir. June 16, 1998) (**hereafter "Juda I"**), and Juda v. Nerney, 211 F.3d 1278 (Table, text in Westlaw), No. 99-2070, 2000 WL 419823 (10th Cir. Apr. 17, 2000) (**hereafter "Juda II"**).

Judge's Findings of Fact and Order Recommending Dismissal with Prejudice [Doc. 32], at ¶¶ 20-32).

The evidence demonstrated that Juda maintained a comfortable, if not extravagant, life style with no legitimate means of support. He had no legitimate income since 1987, yet was able to travel extensively for 5-6 months at a time. He acquired substantial assets, including land and vehicles, and paid for them in cash. Indeed, payments on only a vehicle and land required a monthly outlay of nearly $9,000, which Juda satisfied by cash payments. Juda's financial transactions were always kept under $10,000 so as to avoid mandatory reporting requirements. (Magistrate Judge's Findings of Fact and Order Recommending Dismissal with Prejudice [Doc. 32], at ¶¶ 21-27).

During a prior evidentiary hearing in this case, Juda candidly admitted his involvement in several major drug smuggling enterprises, including one in 1987 involving the importation of a large shipment of marijuana off the coast of Oregon. *See*, United States v. Juda, 46 F.3d 961 (9th Cir. 1995). He admitted a second major operation involving the smuggling of a large shipment of hashish in Canada in 1989, for which he was paid $400,000 in cash. Finally, the 1991 smuggling operation, involving 16 tons of hashish aboard the ill-fated Malekula, formed the basis of Juda's criminal conviction and led to the forfeitures at issue in this case.

Although, as noted above, forfeiture proceedings were commenced against both real and personal property owned by Juda, only the personal property is at issue in this Recommended Disposition. This property consists of an automobile, currency and cashier's checks from various bank accounts and safe deposit boxes in Santa Fe and Taos, New Mexico, and miscellaneous items of jewelry and other personal effects (the jewelry and miscellaneous items will be referred to herein

3

collectively as "the jewelry").[3]

During the course of the criminal prosecutions, and proceeding pursuant to administrative forfeiture provisions of 19 U.S.C. § 1607 *et seq.*, the government seized these items of Juda's personal property in July and August, 1991, and attempted thereafter to notify Juda of the seizures. While Juda was in custody at a facility known to the government, forfeiture notices were mailed to Juda's home address. Some of these notices were forwarded to Juda's criminal defense lawyer. Although the Tenth Circuit later found the notices to be insufficient, the government proceeded with the forfeitures, unaware at the time that they would later be held invalid. Having received no claim or bond from Juda, the government declared the personal property administratively forfeited pursuant to 19 U.S.C. § 1608-09. All items except the jewelry were declared administratively forfeited on October 27, 1991; the jewelry was declared administratively forfeited on December 13, 1991.

If Juda had filed a claim and bond, the government would have been required to bring a judicial forfeiture action if it wished to continue to proceed against Juda's property. The statute of limitations on such an action would have expired on July 15, 1996. 19 U.S.C. § 1621 provides that a suit on forfeiture of property must be brought within five years "after the time when the alleged offense was discovered." The parties having suggested no other appropriate accrual date, the Court assumes that the date "when the alleged offense was discovered" was the date of Juda's arrest. The Tenth Circuit implied as much in Juda II, in holding that the limitations period had expired and noting (at *3), "[i]n this instance, Juda's crimes were discovered in 1991," presumably referring to the date

---

[3]Those items are: (1) 1990 Jeep Cherokee, Customs seizure number ("CN") 91-2407-00021; (2) $40,000 in U.S. currency, CN 91-2407-00022; (3) $50,000 in U.S. currency, CN 91-2407-00023; (4) $19,830 cashier's check, CN 91-2407-00024; (5) $19,882.40 cashier's check, CN 91-2407-00025; (6) $8,753.11 cashier's check, CN 91-2407-00026; and (7) jewelry and other miscellaneous personal items, CN 91-2407-00027.

4

of his arrest. *See also*, Clymore v. United States, 164 F.3d 569, 573 n.4 (10th Cir. 1999) (indicating that normally the date of arrest should be the date of accrual, "[u]nless the alleged offense was discovered well before [the defendant's] arrest, an unlikely scenario . . ."); and United States v. 657 Acres of Land, 978 F. Supp. 999, 1005 (D. Wyo. 1997) (noting that "there are no facts that suggest the government should have discovered the existence of the defendant property prior to the time that defendant Bost was arrested . . .," thus apparently focusing on the property as the offending agent). Although some courts have held the date of accrual to be the date the items were seized, the Court finds in this case that the limitations period began to run on the date Juda was arrested.

In 1996, Juda brought suit to challenge the forfeitures. This Court initially dismissed all of his claims in this case. [Doc. 18]. Upon Juda's appeal, the Tenth Circuit reversed in part (Juda I), holding *inter alia* that the government did not properly notify Juda of the seizures of his personal property. It rejected this Court's finding that Juda had actual notice of the forfeiture proceedings by virtue of notices mailed to his former residence, some of which were forwarded to his attorneys, and it remanded the matter for further proceedings to include findings of fact as to whether Juda may have received actual knowledge of the seizures "through some other channel of communication." Alternatively, the Tenth Circuit invited this Court to "proceed to evaluate the merits of Juda's arguments as to why the property is not subject to forfeiture," concluding that "it would serve no purpose to upset the forfeitures for procedural faults if Juda has no basis for return of the property," citing United States v. Deninno, 103 F.3d 82 (10th Cir. 1996).

In the proceedings in district court upon remand, the government relied on Deninno and declined to offer any evidence as to actual notice, focusing instead on proving that the seized personal property constituted proceeds of criminal activity. Following an evidentiary hearing, this Court

5

concluded that the items did indeed constitute the proceeds of illegal activity and therefore, under Deninno, did not reach the question of notice. (*See* Magistrate Judge's Findings of Fact and Order Recommending Dismissal with Prejudice [Doc. 32]; Order Adopting Recommended Disposition [Doc. 35]). Juda again appealed.

After Juda I was decided, but before Juda II, the Tenth Circuit issued its ruling in Clymore v. United States, *supra*. Clymore distinguished Deninno on the ground that the statute of limitations had not yet run in that case and therefore would not have prevented the government from initiating a judicial forfeiture proceeding, in contrast to the situation in Clymore.

> Clymore held that, in the Tenth Circuit, the consequence of a constitutionally ineffective notice is that an administrative forfeiture is 'void and must be vacated,' because the statute of limitations has expired to prevent the refiling of a new forfeiture proceeding ... 'Where obvious statute of limitations problems exist, ... the offending forfeiture should be vacated and the statute of limitations allowed to operate, subject, of course, to any available government arguments against it.' [Citing Clymore]. The district court may adopt the Deninno approach and evaluate the merits of a procedurally-defective forfeiture only if there is no apparent limitations problem.

Juda II, at *3. The court held in Juda II that the applicable five-year limitations period of 19 U.S.C. § 1621 had clearly expired and, under Clymore, the government would have to return Juda's property unless it could show that "laches or equitable tolling principles" should be applied to stop the running of the statute. The court concluded:

> Under the dictates of Clymore, we vacate the forfeitures of Juda's personal property and again remand the matter to the district court. On remand, the district court is to determine whether the government has a valid argument against the operation of the statute of limitations. If the government has no such argument, the forfeited personal property, or its monetary equivalent, should be returned to Juda.

Juda I, at *3.

On remand, this Court invited the government to brief its position on the question of avoiding the statute of limitations, with an opportunity for response by Juda. The Court has now received submissions from both parties on this issue and finds that no reply is necessary. The Court also finds that a hearing will not be necessary, as this matter may be decided on the briefs.

### Discussion

As noted above, the statute of limitations expired in this matter on July 15, 1996. Thus, the government may not institute suit for judicial forfeiture of Juda's personal property unless it can present "a valid argument against the operation of the statute of limitations." Juda II, at *3. The Tenth Circuit suggested in Juda II that equitable tolling would be an appropriate argument in avoidance of the statute, citing United States v. Marolf, 173 F.3d 1213, 1218 (9th Cir. 1999). The government relies on Marolf in arguing that the limitations period in this case should be equitably tolled.

The Court finds that equitable tolling principles should be applied in this case. Aside from the fact that the Tenth Circuit suggested such applicability, the Court agrees with the reasoning of United States v. $57,960.00 in United States Currency, 58 F. Supp. 2d 669 (D.S.C. 1999), in which the court noted that the principle of equitable tolling is read into every federal statute of limitations and, further, that it is consistent with congressional intent as reflected in the language of 19 U.S.C. § 1621, which provides for tolling in certain circumstances. *See*, Bowen v. City of New York, 476 U.S. 467, 479, 106 S. Ct. 2022 (1986).

The court in United States v. $57,960 held that equitable tolling was "called for by the facts of the instant case because the United States reasonably relied on the administrative forfeiture proceeding and the attempted notice to Babb. There is no evidence of dilatory tactics on the part of

7

the United States." Id., at 664. The same is true in the present case. United States v. $57,960 pointed out that summary forfeiture proceedings were created by Congress to provide the government an efficient law enforcement tool as an alternative to the more formal and expensive judicial forfeiture proceedings, and that refusal to toll the limitations period in an appropriate case "would restrict rather than enhance the use of the administrative forfeiture mechanism." Id., at 664-665. In the present case, as in United States v. $57,960, the government "reasonably relied on the administrative forfeiture proceeding and the attempted notice" to Juda. Until the Tenth Circuit's April 17, 2000 opinion in Juda II, the government was in the process of litigating the validity of the administrative forfeiture. The Court cannot say that the government's actions, or its arguments in support of those actions, were unreasonable or meritless.

This Court initially held that the government's notice attempts were sufficient to provide the requisite notice to Juda. That finding of fact was overturned by the Tenth Circuit in Juda I, but the circuit court did not hold the forfeitures void for lack of notice; rather, it remanded for a determination as to whether Juda may have received actual notice from some other source. Thus, at the time of the first remand, the government maintained its position, and continued its efforts to convince the courts, that the administrative forfeiture was valid. While there was evidence that Juda may have had actual or constructive notice of the forfeiture proceedings, the government chose to rely on a different approach. It presented evidence demonstrating the nexus between the items seized and Juda's criminal activities. United States v. Deninno. Adhering to the directive of the Tenth Circuit in Juda I, the government reasonably assumed that it need not provide proof of the effectiveness of notice, so long as it could prove that the property seized was derived from illegal activity. This was reasonable, given the state of the law at the time of the remand and evidentiary

8

hearing.

The government points out, accurately, that "there has been no unequivocal judicial determination or finding, either by the Tenth Circuit or the United States Magistrate on remand, that notice to Juda of the forfeiture of his personal property was so constitutionally defective that Juda's rights were violated." (United States' Brief [Doc. 48], at 4). The Tenth Circuit did not hold in Juda II that there was no actual notice; rather, it acknowledged that this issue was never reached, given the Court's finding that the seized personal property constituted the proceeds of criminal activity and was thus subject to forfeiture regardless of the state of notice. Thus, it was reasonable for the government to delay bringing judicial forfeiture proceedings while it continued to press the argument that the administrative forfeiture was valid. This forbearance does not amount to the sort of "dilatory tactics" which would undercut the government's equitable arguments; rather, it was a reasoned response to the unfolding, complex proceedings in this case.

Although there has been no definitive ruling on the validity of notice in this case, this Court considers that the Tenth Circuit effectively ended the litigation surrounding validity of the administrative forfeiture on April 17, 2000 with its holding that, because the government did not produce proof on the actual notice issue, "[u]nder the dictates of Clymore, we vacate the forfeitures of Juda's personal property." It is not part of the mandate to this Court to hold further evidentiary hearings on the issue of notice, even though that issue remains unresolved. Rather, the Court's sole function is to determine whether the government has a valid argument against operation of the statute of limitations. The Court concludes that there is, indeed, a valid and convincing argument that the statute should be equitably tolled throughout the time in which the government "reasonably relied on the administrative forfeiture proceeding," and that period should be measured by "the pendency of

9

the administrative forfeiture." United States v. $57,960, at 665.

The Court finds that "the period of pendency of the administrative forfeiture" runs from the dates of declaration of administrative forfeiture, until the date the Tenth Circuit ultimately ruled that the forfeitures were vacated. Id., at 662; United States v. Clymore, No.96-763 JC/RLP, slip op. at 2 (D.N.M. Apr. 5, 2000). In the present case, that period runs from December 13, 1991 until April 17, 2000 for the jewelry, and from October 27, 1991 until April 17, 2000 for all other items of personal property at issue in this case.

Applying these periods of tolling to the limitations period in this case, it is apparent that the government still has time within the statute of limitations to bring a judicial forfeiture action, if it wishes, against Juda's personal property as described above.

## **Recommended Disposition**

1. That the statute of limitations on bringing a forfeiture action be tolled from October 27, 1991 until April 17, 2000, with respect to all items of personal property other than the jewelry;

2. That the statute of limitations be tolled from December 13, 1991 until April 17, 2000, with respect to the jewelry;

3. That the government need not return Juda's personal property or its monetary equivalent, if it institutes judicial forfeiture proceedings within the remaining limitations period;

4. That Juda's Motion for Immediate Return of Personal Properties [Doc. 54], and Motion to Set Time for Telephonic Hearing [Doc. 55], be denied; and

5. That this action be dismissed with prejudice.

								*Lorenzo F. Garcia*
								Lorenzo F. Garcia
								United States Magistrate Judge

10